**IDAHO SPORTING CONGRESS, and
Land and Water Fund of the
Rockies, Plaintiffs,**

v.

**COMPUTROL, INC., an Idaho
Corporation, Defendant.**

No. 96–0027–S–BLW.

United States District Court,
D. Idaho.

Dec. 17, 1996.

Laird J. Lucas, Land & Water Fund of the Rockies, Boise, ID, Randall M. Weiner, Land & Water Fund of the Rockies, Boulder, CO, for Plaintiffs.

Steven B. Andersen, Murray D. Feldman, Holland & Hart, Boise, ID, for Defendant.

## MEMORANDUM DECISION AND ORDER

WINMILL, District Judge.

### INTRODUCTION

This case comes before the Court on Defendant's Motion to Dismiss (Docket No. 6). The parties have submitted briefing on the issues and oral argument has been heard. The Court will briefly summarize the factual background of this litigation, set forth the applicable standard of review, and resolve the pending Motion.

### BACKGROUND

Defendant Computrol, Inc. ("Computrol") is an Idaho Corporation engaged in the manufacture and assembly of sport fishing equipment. Among other things, Computrol assembles and incorporates into sport fishing products "downrigger fishing weights"—devices which, not surprisingly, are made in substantial part of lead. Defendant's Brief at p. 1. Plaintiff Land and Water Fund of the Rockies ("LAW") is a regional organization dedicated to environmental protection and awareness issues in western states. Plaintiff Idaho Sporting Congress ("ISC") is a coalition of hunters, fisherman, backpackers and other outdoor enthusiasts committed to protecting and conserving Idaho's natural resources. On September 14, 1995, LAW sent Computrol a sixty-day notice of intent to sue letter. The letter informed Computrol that LAW intended to file suit against it for alleged violations of the Emergency Planning and Community Right-to-Know Act ("EPCRA"). Sometime after Computrol received the pre-suit notice letter (September 14, 1995), but before LAW filed its Complaint in this action (January 18, 1996), Computrol filed various documents with certain federal, state and local entities in an effort to cure the deficiencies alluded to in LAW's notice letter. LAW's Complaint, filed on January 18, 1996, designated ISC as a Co-Plaintiff in the action. Computrol subsequently moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) or, alternatively, Federal Rule of Civil Procedure 12(b)(6).

### APPLICABLE LAW

A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) requires the Court to determine whether it has subject matter jurisdiction over the claims in the plaintiff's complaint. On a 12(b)(6) motion, the Court inquires whether the plaintiff has stated a claim upon which relief can be granted. In making this inquiry, the Court must "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Parks Sch. of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). In addition, the Court may not dismiss the complaint unless it is convinced that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *Id.*

### DISCUSSION

Computrol raises four arguments in behalf of its Motion to Dismiss. The first is that, as a matter of law, EPCRA does not authorize citizens suits for purely historical violations of the statute. The second maintains that LAW may not advance claims attacking the completeness or adequacy of Computrol's EPCRA filings—i.e., claims asserting ongoing violations—because its Complaint and pre-suit notice letter refer only to Computrol's alleged failure to make the required filings. Third, Computrol seeks to dismiss ISC as a party to this action on the grounds it failed to serve Computrol with a sixty-day notice of intent to sue letter as required by statute. And fourth, Computrol contends that LAW's claims alleging EPCRA violations for the years 1990, 1991, and 1992 are barred by the applicable statute of limitations.

#### A. Citizens Suits for Wholly Past Violations

1. *UMI v. The Steel Co.*

 ■ Two courts of appeals have addressed the principal question presented by Computrol's pending motion: whether EPCRA authorizes citizen suits for wholly past

violations of the statute. The two courts of appeals answered the question differently. The Sixth Circuit, the first court to confront the question, answered it negatively, holding that EPCRA authorizes citizen suits only for ongoing violations. *See Atlantic States Legal Found. v. United Musical Instruments*, 61 F.3d 473 (6th Cir.1995) (*"UMI"*). The Seventh Circuit, approximately a year later, declined to follow the reasoning of the *UMI* Court, concluding that EPCRA does permit citizen suits alleging purely historical violations. *See Citizens for a Better Env't v. The Steel Co.*, 90 F.3d 1237 (7th Cir.1996), *petition for cert. filed*, 65 U.S.L.W. 3342 (U.S. Oct. 21, 1996) (No–96–643) (*"Steel Co."*). The Court has examined both cases carefully, along with the parties' briefing, and concludes that the arguments in favor of allowing citizen suits for wholly past violations are stronger than those against allowing such suits.

"[T]he starting point for interpreting a statute is the language of the statute itself." *Gwaltney v. Chesapeake Bay Foundation*, 484 U.S. 49, 56, 108 S.Ct. 376, 381, 98 L.Ed.2d 306 (1987) (internal quotations omitted) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). EPCRA's citizen suit provision, 42 U.S.C. § 11046(a)(1), by its terms does not restrict citizen suits to cases alleging ongoing violations. Rather, it authorizes such suits for "failure to do" certain things, specifically, failure to "[c]omplete and submit" the required forms. *Id.* As the *Steel Co.* Court noted, " 'failure to do' something can indicate a failure past or present." *Steel Co.*, 90 F.3d at 1243.

Admittedly, the "failure to do" language is not without ambiguity. When one reads the statutory language beyond "failure to do" and "failure to ... [c]omplete and submit," however, those ambiguities are dispelled. For what the statute actually says is that citizen suits are authorized for "failure to ... [c]omplete and submit" the required forms

*"under section 11022(a)"* and *"under section 11023(a)"* of the statute.[1] 42 U.S.C. § 11046(a)(1)(A)(iii)–(iv) (emphasis added). Sections 11022(a) and 11023(a) in turn contain descriptions of the forms that must be submitted, the locations to which they must be submitted, *and the deadlines by which they must be submitted* (March 1 and July 1 of every calendar year, respectively). 42 U.S.C. §§ 11022(a)(1)–(2), 11023(a). The Court agrees with the *Steel Co.* Court that Congress included the word "under" in Section 11046(a)(1) for a reason, and that "[t]he most natural reading of 'under' a section is 'in accordance with the requirements of' that section. It is simply a way to incorporate the requirements of the referenced section without listing them all over again." *Steel Co.*, 90 F.3d at 1243. "Where a statutory term is not defined in the statute, it is appropriate to accord the term its 'ordinary meaning.'" *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 833 (9th Cir.1996) (citing *United States v. van den Berg*, 5 F.3d 439, 442 (9th Cir.1993)). As it is used in the law, one of the ordinary meanings of the term "under" is "according to" or in accordance with. *See* Black's Law Dictionary 1525 (6th ed. 1990). EPCRA's citizen suit provision, therefore, should be read to authorize suits for failure to complete and submit the necessary forms in accordance with the requirements of sections 11022(a) and 11023(a). The Court's responsibility is to "determine whether the plain language of the statute makes it meaning reasonably clear ... If it is clear, that is the end of the inquiry." *United States v. Workinger*, 90 F.3d 1409, 1412 (9th Cir.1996) (internal citations omitted); *see also Oregon Natural Resources Council, Inc. v. Kantor*, 99 F.3d 334, 338 (9th Cir.1996); *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1236 (9th Cir.1994). Under the plain language of the statute, the Court believes it is at least "reasonably clear" that EPCRA authorizes citizen suits for wholly past, not just ongoing,

---

1. The error in the *UMI* Court's analysis of the statutory language is that it is incomplete. *UMI* emphasizes the phrase "failure to [c]omplete and submit" but fails to come to terms with the import of the ensuing qualifiers: "under section 11022(a)" and "under section 11023(a)." *See UMI*, 61 F.3d at 475.

violations of the statute.[2] The Court therefore chooses to follow *Steel Co.*, not *UMI*, in holding that EPCRA does permit citizen suits alleging only historical violations of the statute.

2. Does the Complaint Allege Ongoing Violations?

In its briefing in opposition to Computrol's Motion to Dismiss LAW argues that even if the Court were to hold that EPCRA precludes citizen suits based on allegations of past violations, that would not dispose of the case, since its Complaint alleges ongoing as well as past violations. *See* Plaintiffs' Brief in Opposition to Motion to Dismiss at pps. 7–9. Computrol insists, to the contrary, that the Complaint alleges only past violations. See Defendant's Reply Memorandum at pps. 9–12. This may be a pointless dispute, since LAW may well elect, in light of the Court's holding that it may proceed in the case on a theory of past violations, not to pursue its theory of ongoing violations. However, nothing would prevent LAW from proceeding on both theories, and it is therefore necessary for the Court to address the parties' arguments regarding whether the Complaint alleges ongoing or only past violations.

■ The Court's obligation on a motion to dismiss is to treat the nonmoving party's factual allegations as true and construe them in the light most favorable to that party. *See National Wildlife Federation v. Espy*, 45 F.3d 1337, 1340 (9th Cir.1995); *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir.1994). With this standard in mind, the Court is persuaded that LAW's Complaint should be construed as alleging ongoing violations. LAW's Complaint states in several paragraphs that the untimely reports submitted by Computrol fail to describe "fully and accurately its uses and releases of toxic chemicals." Complaint at ¶¶ 40, 43, 46, 49 and 52. The inference that can be—and, in keeping with the command to construe the Complaint in the light most favorable to LAW, should be—drawn from these allega-

tions is that, because the reports submitted by Computrol were incomplete and accurate, Computrol is still in violation of EPCRA. Also, LAW's Prayer for Relief includes a request for the Court to "[e]njoin defendant from committing any further violations of EPCRA." Complaint at p. 12. The language in LAW's Complaint is thus susceptible of the interpretation that it alleges ongoing violations of EPCRA. Where that is the case, the Court is required to construe the Complaint as making those allegations.

3. Adequacy of LAW's Notice Letter

■ Even if the Complaint can be construed to allege ongoing violations of EPCRA, Computrol maintains, the sixty-day notice letter sent by LAW referred only to Computrol's alleged past violations. *See* Defendant's Reply Memorandum at pps. 9–10. In support of this argument, Computrol cites a few cases for the proposition that "EPCRA's strict notice letter requirement is strongly enforced by the federal courts. A citizen suit can only be as broad as the violations alleged in the pre-suit notice letter." *Id.* at p. 10. Accepting for purposes of argument the accurateness of this proposition, the Court finds that LAW's notice letter to Computrol is broad enough to encompass ongoing violations. The first sentence of LAW's pre-suit notice letter charges that Computrol "*is* in violation of [EPCRA]." Complaint, Appendix A at p. 1 (emphasis added). Further, page two communicates to Computrol LAW's belief that it failed either "to submit, *or accurately submit,* by the required deadlines," the necessary forms. *Id.* at p. 2 (emphasis added). True, this sentence contains the modifying clause "by the required deadlines," but the clear implication of the allegation that Computrol's EPCRA filings are inaccurate is that Computrol is still—presently—in violation of the statute, as page one of the notice letter expressly states. Thus, the scope of the sixty-day no-

---

2. Because the Court believes the plain language of the statute mandates this conclusion, the Court finds it unnecessary to wade into the debate over the continued viability of the reasoning in Part II.B of the Supreme Court's opinion in

*Gwaltney v. Chesapeake Bay Foundation,* 484 U.S. 49, 59–61, 108 S.Ct. 376, 382–83, 98 L.Ed.2d 306 (1987), and its implications for analysis of EPCRA. *Compare Steel Co.,* 90 F.3d at 1244 *with UMI,* 61 F.3d at 475–77.

tice letter is no bar to LAW's ongoing violations theory of the case.

### B. ISC as a Co–Plaintiff

Computrol's Motion also seeks to dismiss ISC as a party to this action on the grounds it failed to provide Computrol with its own sixty-day notice of intent to sue letter. ISC concedes it never sent a pre-suit notice letter to Computrol, but argues that it may nevertheless join in the action because the pre-suit notice requirement was satisfied by LAW's letter.

■ Initially the Court notes that the language of EPCRA supports Computrol's argument that each prospective plaintiff in an EPCRA citizen suit has an independent obligation to comply with the statute's notice requirements. EPCRA's citizen suit provision states that "any person may commence a civil action *on his own behalf....*" 42 U.S.C. § 11046(a)(1) (emphasis added). Furthermore, the notice requirement states that "[n]o action may be commenced ... prior to 60 days after *the* plaintiff has given notice of the alleged violation...." *Id.* at 11046(d)(1) (emphasis added).

More importantly, controlling precedents dictate the same result. In *Hallstrom v. Tillamook County,* 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989), the Supreme Court held that compliance with the sixty-day notice requirements of the Resource Conservation and Recovery Act of 1976 is a "mandatory, not optional, condition precedent for suit." *Id.* at 26, 110 S.Ct. at 309. In a Clean Water Act case, the Ninth Circuit characterized *Hallstrom* as holding that notice requirements of the sort in question are to be "strictly construed." *Washington Trout v. McCain Foods, Inc.,* 45 F.3d 1351, 1354 (9th Cir.1995). The *Washington Trout* Court affirmed a district court decision dismissing plaintiffs' case for failure to satisfy the Clean Water Act's notice requirements. *Id.* The Court stressed that one of the deficiencies in the notice letter sent to the defendant in that case was that it "fail[ed] to name two of the organizations that eventually became the only plaintiffs, namely Audubon and Western Trout." *Id.* One of the sixty-day notice requirement's purposes, the Court

explained, "is to allow the parties time to resolve their conflicts in a nonadversarial time period." *Id.* The failure of the notice letter to inform the defendant and the government of who the parties to the dispute were "made any sort of resolution between the parties during the notice period an impossibility." *Id.* This reasoning applies with equal force to the instant case. *See also New Mexico Citizens for Clean Air and Water v. Espanola Mercantile Co.,* 72 F.3d 830, 833 (10th Cir.1996) (holding that each plaintiff must comply with the sixty-day notice requirements to be a proper party to a Clean Water Act citizen suit); *Fried v. Sungard Recovery Servs.,* 900 F.Supp. 758, 765 n. 5 (E.D.Pa.1995) (dismissing a party who was not a signatory to another party's notice letter and never sent a notice letter of his own, and rejecting the argument that failure to provide notice can be waived).

ISC and LAW reason that where one plaintiff in a citizen suit has complied with the notice requirements, other plaintiffs who have not individually done so may nonetheless join in the lawsuit. The reason is that "the [notice] requirement attaches to the lawsuit—*not* the plaintiff—and [that] requirement is satisfied so long as at least one plaintiff has given statutorily adequate notice." *Citizens for a Better Env't v. Union Oil Co.,* 861 F.Supp. 889, 913 (N.D.Cal.1994), *aff'd,* 83 F.3d 1111 (9th Cir.1996), *cert. denied,* ─── U.S. ───, 117 S.Ct. 789, 136 L.Ed.2d 731 (1997). Other courts have accepted this reasoning. *See, e.g., Environmental Defense Fund v. Tidwell,* 837 F.Supp. 1344, 1352–53 (E.D.N.C.1992); *Klickitat County v. Columbia River Gorge Comm'n,* 770 F.Supp. 1419, 1424–25 (E.D.Wash.1991). These courts make some effort to reconcile their holdings with the Supreme Court's decision in *Hallstrom. See, e.g., Citizens for a Better Env't,* 861 F.Supp. at 912–913. The Court need not decide whether that effort is successful, however, because all of the cases ISC and LAW cite were handed down prior to the Ninth Circuit's decision in *Washington Trout. Washington Trout,* as already noted, stresses that one important purpose of the sixty-day notice requirement in citizen suits under environmental statutes is to afford the

parties an opportunity to reach a negotiated settlement to their dispute during the notice period; it is more than simply a means of establishing federal jurisdiction. *See* 45 F.3d at 1354. And this purpose—facilitation of a negotiated resolution—cannot be achieved when the parties entitled to receive notice are not informed of the identities of all other parties to the dispute. *Id.* Simply put, the cases LAW and ISC rely upon cannot be squared with *Washington Trout. Id.; see also New Mexico Citizens for Clean Air and Water*, 72 F.3d at 833 ("If the defendant and the agencies do not know the parties involved, effective negotiation is not possible.")

### C. Statute of Limitations

Finally, Computrol maintains that LAW's claims based upon alleged violations for the years 1990, 1991 and 1992 are barred by the applicable statute of limitations. EPCRA does not contain a specific statute of limitations period, Computrol points out, and therefore the "most analogous state law limitations period" applies. Defendant's Memorandum in Support of Motion to Dismiss at p. 15. Computrol puts forward Idaho Code Sections 5–219(2) and 39–108(4) as supplying the most closely analogous statute of limitations periods; both statutory provisions provide two-year limitation periods.

 Computrol's argument overlooks the fact that "a state statute of limitations should only be applied in the absence of a relevant federal statute of limitations." *Sierra Club v. Chevron U.S.A., Inc.,* 834 F.2d 1517, 1521 (9th Cir.1987). In *Sierra Club,* the Ninth Circuit held that 28 U.S.C. § 2462—a five-year statute of limitations—is a relevant federal limitations period for a citizen suit under the Clean Water Act.[3] Rejecting the defendant's argument that the Court should borrow an analogous state limitations period, the Court stated:

> Several district courts have already held that section 2462 applies to citizen actions seeking the enforcement of civil penalties under the Clean Water Act. (Citations

omitted). We agree with these courts. Application of section 2462 to citizen enforcement suits is in keeping with the language of the statute; a citizen enforcement suit is also an "action ... for the enforcement of [a] civil fine."

*Id.* at 1521 (quoting 28 U.S.C. § 2462); *see also Public Interest Research Group of N.J. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 74–75 (3rd Cir.1990) (applying same five-year federal statute of limitations period to citizen suit brought under Clean Water Act), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The Court can see no reason (and Computrol has offered none) why EPCRA and the Clean Water Act should be treated differently for statute of limitations purposes. Section 2462 furnishes a relevant statute of limitations period for citizen suits under both environmental statutes. *See Sierra Club,* 834 F.2d at 1521. Accordingly, a five-year statute of limitations applies to this lawsuit, and LAW's 1990, 1991 and 1992 claims against Computrol are not time-barred.

### CONCLUSION

First, the Court interprets EPCRA to permit citizen suits alleging purely historical violations of the statute. Second, should LAW choose to pursue an ongoing violations theory of the case in addition to its past violations theory, neither the language of the Complaint nor that of the sixty-day notice letter preclude it from doing so. Third, ISC's failure to comply with EPCRA's notice provisions requires its dismissal from the case; ISC may not rely upon LAW's sixty-day notice letter to join this lawsuit. And fourth, LAW's 1990, 1991 and 1992 claims against Computrol are not time-barred; a relevant (five-year) federal statute of limitations exists and governs this case.

### ORDER

In accordance with the views expressed in the above Memorandum Decision,

---

**3.** Section 2462 of Title 28 provides: "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon."

NOW THEREFORE IT IS HEREBY ORDERED, that Defendant's Motion to Dismiss (Docket No. 6) be, and the same is hereby, GRANTED insofar as it seeks dismissal of Idaho Sporting Congress as a party to this action, and DENIED in all other respects.

IT IS FURTHER ORDERED, that Plaintiff's Motion for Discovery (Docket No. 15) be, and the same is hereby, deemed MOOT.